UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LYNN HARLEY,

    Plaintiff,

v.                                          Case No.:  8:21-cv-2670-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Lynn Harley seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A. Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C. Procedural History

Plaintiff filed an application for a period of disability and disability insurance and for supplemental security income on February 27, 2017, alleging disability beginning on November 1, 2014. (Tr. 318-30). The applications were denied initially and on reconsideration. (Tr. 96, 97, 125, 126). Plaintiff requested a hearing,[1] and on September 9, 2020, a hearing was held before Administrative Law Judge Carl C. McGhee ("ALJ"). (Tr. 32-49). On November 19, 2020, the ALJ entered a decision finding Plaintiff not under a disability from November 1, 2014, through the date of the decision. (Tr. 12-25).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on May 26, 2021. (Tr. 3-7). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on November 12, 2021, and the case is ripe for review.[2] The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 15).

---

[1] A hearing was originally scheduled for December 12, 2019. (Tr. 231). Plaintiff did not appear at the hearing on time, and the ALJ entered an Order of Dismissal. (Tr. 130-31). Plaintiff appealed that decision and the Appeals Council remanded the case to the ALJ to determine whether Plaintiff had good reasons for not appearing. (Tr. 134-135). The ALJ scheduled another hearing for September 9, 2020. (Tr. 296).

[2] The Appeals Council extended the time to file a civil action to 30 days from the date Plaintiff received an October 15, 2021 letter. (Tr. 1).

## D.     Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. (Tr. 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2014, the alleged onset date. (Tr. 15). At step two, the ALJ found that Plaintiff had the following severe impairments: "schizophrenia; bipolar disorder; generalized anxiety disorder; alcohol use disorder; cannabis use disorder; lumbago; levoscoliosis; polyarthralgia." (Tr. 15). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; requires a sit/stand option with an alternating interval of 1-2 hours; frequently reach above shoulder level with both arms, push and/or pull with both arms, and reach waist to chest with both arms; frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; constant handling with both hands, fingering with both hands, and feeling with both hands; no climbing ladders and scaffolds; no

> working around high, exposed places; can occasionally work around moving mechanical parts, humidity and wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations; able to perform simple, routine, repetitive tasks; able to understand, remember, and carry out simple instructions; limited to work that only requires occasional changes in the work setting; and limited to work that only requires occasional interaction with the public, coworkers, and supervisors.

(Tr. 17).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a dental assistant. (Tr. 23). At step five, the vocational expert testified that considering Plaintiff's age (33 years old on the alleged disability onset date), education (at least high school), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 24-25). Specifically, the vocational expert found that Plaintiff could perform such occupations as:

(1) marker, DOT 209.587-034,[3] light, unskilled, SVP 2

(2) router, DOT 222.587-038, light, unskilled, SVP 2

(3) photocopy machine operator, DOT 207-685-014, light, unskilled, SVP 2

(Tr. 24-25). The ALJ concluded that Plaintiff had not been under a disability from November 1, 2014, through the date of the decision. (Tr. 25).

---

[3] DOT refers to the *Dictionary of Occupational Titles*.

## II.     Analysis

On appeal, Plaintiff raises three issues:

(1) Whether the ALJ's decision was in error in that the record was not fully developed;

(2) Whether the ALJ' decision was in error in failing to give Plaintiff the opportunity to obtain an attorney; and

(3) Whether the ALJ's decision was in error in relying on a response from a vocational expert to an incomplete or vague hypothetical.

(Doc. 18, p. 6, 19, 15).

### A.     Duty to Develop the Record

Plaintiff argues that the ALJ should have obtained opinions from medical advisors to the state agency from a prior 2016 disability review, even though it was later determined that the continuing disability review was conducted in error. Plaintiff also argues that the ALJ should have asked Plaintiff if she was continuing to receive mental health treatment and, if so, should have obtained treatment records from Gracepoint Mental Health Center or elsewhere. (Doc. 18, p. 9). Plaintiff's arguments lack merit.

A plaintiff bears the burden of proving she is disabled and is responsible "for producing evidence in support of h[er] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Even so, "[i]t is well-established that the ALJ has a basic duty

to develop a full and fair record." *Id. See* 20 C.F.R. § 404.1545(a)(3), 20 C.F.R. § 416.945(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). To remand a case because of an ALJ's failure to fully develop the record, the claimant must show that her right to due process has been violated to such an extent that the record contains evidentiary gaps, which resulted in unfairness or clear prejudice. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). After review of the decision and given the medical records and other records before the ALJ, the ALJ did not err by failing to obtain additional records.

Apparently, Plaintiff had been receiving benefits, which were terminated due to Plaintiff returning to work at a substantial gainful employment level. (Tr. 42, 398, 412). Plaintiff claims that some sort of disability-review file "must have contained opinions from medical advisors to the State Disability Determination Service. However, records from the continuing disability review were not associated with [her] claims file, and should have been." (Doc. 18, p. 7). Plaintiff merely speculates that this file contained opinions from medical advisors and fails to show any evidentiary gaps in the record which resulted in unfairness or clear prejudice. In this case, State Agency medical personnel conducted both a physical assessment and a

mental health assessment and the ALJ considered both in the decision. (Tr. 23). Plaintiff also underwent a consultative physical and multiple consultative mental health evaluations, which the ALJ considered in the decision. (Tr. 20, 22-23). Plaintiff failed to show an evidentiary gap, and failed to show any unfairness or prejudice regarding the ALJ not obtaining speculative records from a disability review that may have been conducted in error.

Plaintiff also argues the ALJ should have asked Plaintiff about recent mental health treatment and specifically about treatment at Gracepoint Mental Health Center. (Doc. 18, p. 8). In June 2019, the ALJ obtained treatment records from Gracepoint Mental Health. (Tr. 785-805; 830-847). These records were for treatment from January through August 2018. (Tr. 21; 785-805; 830-847). Plaintiff claims that if the ALJ had asked about continuing treatment, and Plaintiff had such treatment, then the ALJ should have obtained treatment records from Gracepoint Mental Hospital or other provider. (Doc. 18, p. 9). Plaintiff, who is now represented by counsel, must show more than mere speculation about possible treatment records to show an evidentiary gap in the record and to meet the standard of unfairness and prejudice. This argument fails.

Here, the ALJ satisfied his duty to develop a full record by obtaining and reviewing medical records, State Agency decisions, and multiple consultative

examinations as well as considering other evidence of record. Thus, remand is not warranted.

### B.     Counsel

Plaintiff acknowledges that she may waive her statutory right to counsel at a hearing before an ALJ. (Doc. 18, p. 10; (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). Plaintiff claims that her right to be represented by counsel at a hearing is inextricably intertwined with the issue of whether the record was fully developed. (Doc. 18, p. 12). Plaintiff "posit[s]" or speculates that if she had counsel at the hearing, her attorney would have obtained updated medical records, a mental source statement from a psychiatrist, opinions from the state disability determination services from 2016, and would have objected to the hypothetical to the vocational expert, which was vague. (Doc. 18, p. 12). Plaintiff does not, however, appear to argue that she did not properly waive the right to counsel at the hearing.

The Eleventh Circuit has long recognized that "'[a] Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ.'" *Reynolds v. Soc. Sec. Admin.*, 679 F. App'x 826, 827 (11th Cir. 2017) (quoting *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). As a result, the Commissioner has a duty to notify a claimant in writing about the options for obtaining a lawyer or representative and must include that a legal services organization may provide legal services free of charge. *Id.* (citing 42 U.S.C. §

406(c)). If a claimant is not properly informed of her right to representation, either in a prehearing notice or at the hearing, a claimant cannot knowingly and intelligently waive her statutory right to counsel or representation. *Id.* at 827-828 (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)).

Here, Plaintiff adequately waived her right to representation. The record demonstrates many instances informing Plaintiff of her right to representation and her waiver of that right. (Tr. 128-129, 138 ("You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal."), 152, 159, 167 ("I UNDERSTAND I HAVE A RIGHT TO BE REPRESENTED AND THAT IF I NEED REPRESENTATION, THE SOCIAL SECURITY OFFICE OR HEARING OFFICE CAN GIVE ME A LIST OF LEGAL REFERRAL AND SERVICE ORGANIZATIONS TO ASSIST ME IN LOCATING A REPRESENTATIVE."), 188, 210-19, 285-90). In addition, at the hearing, the ALJ verified with Plaintiff that she was appearing at the hearing without a representative and informed her that she had the right to be represented. (Tr. 34). The ALJ then told her:

> You have the right to be represented by an attorney or non-attorney who may help you obtain and submit records, explain medical terms, make requests, protect your rights, and present evidence in the light most favorable to your case. A

> representative may charge you for expenses such as obtaining and copying medical records, but may not charge or receive a fee unless I approve it. Representatives do not normally get paid unless I award benefits and then may only accept 25 percent of your back benefits or $6,000, whichever is less. Some legal service organizations offer free legal representation if you qualify under their rules, but this is usually need-based. Of course, you may also choose to proceed today without a representative.

(Tr. 34-35). The ALJ next asked Plaintiff if she understood her right to representation and she responded yes. (Tr. 35). The ALJ asked if she would like to proceed or would she rather have time to find a representative. (Tr. 35). She conveyed she wanted to continue but asked if she would be able to obtain counsel "next time." (Tr. 35). The ALJ explained that after the hearing, he would make a decision and once he made his decision, there were no more hearings unless she appealed and "they grant you that opportunity." (Tr. 35). The ALJ emphasized that once he makes a decision, the decision is final. (Tr. 35). The ALJ then asked again if Plaintiff wanted to obtain an attorney and told her "this is the time for you to get the attorney." (Tr. 35). Plaintiff responded, "Okay, no sir. I just want to go right now and just, you – because I waited so long. I've been waiting, like, for a while and I just want to, you – for it to go right now if we can." (Tr. 35-36). The hearing continued.[4]

---

[4] While not key to the waiver issue, later at the hearing, well after the ALJ explained Plaintiff's right to counsel and after Plaintiff testified about her limitations, Plaintiff and the ALJ discussed whether the hearing was on Plaintiff's February 2017 applications or on a prior termination of benefits. (Tr. 39-43). During this discussion, Plaintiff stated that she needed an attorney. (Tr. 41). The ALJ told her it was too late to get an attorney and that he had to finish the hearing and make a decision. (Tr. 41). The ALJ stated, "[t]hat's why we give you the opportunity at the very beginning [of the hearing] to decide if you want the attorney or not." (Tr. 41). The ALJ also

The record confirms that Plaintiff received multiple notifications of her right to counsel and her ability to waive that right. The agency notified Plaintiff in writing multiple times of her right to representation, resources available to help her obtain counsel, the potential that such representation may be free or at a reduced rate, and that the agency generally approves fee agreements when the fee is no more than 25% of the past-due benefits, the maximum amount the agency would withhold for fees. The record also confirms that Plaintiff knowingly and voluntarily waived her right to counsel.

Even if Plaintiff did not properly waive her right to representation – which is not the case here – Plaintiff must still show clear prejudice to remand this action. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). As the Court found in the first issue, Plaintiff has not shown the record contains evidentiary gaps that would result in unfairness or prejudice. And even if the ALJ had a "special duty" to develop the record because Plaintiff had not waived her right to representation – which is not the case here – the ALJ satisfied this additional duty to develop the record scrupulously and conscientiously. *See id.* To reiterate, the ALJ obtained a significant amount of medical evidence, evaluated the state agency medical sources' reports, considered the consultative examinations, obtained hearing testimony from Plaintiff

---

informed Plaintiff that she could get an attorney after the hearing, and that was her "right also." (Tr. 41-42). This discussion does not impact Plaintiff's understanding of her rights and her waiver of the right to representation at the outset of the hearing.

and obtained hearing testimony from a vocational expert before rendering a decision. Plaintiff failed to meet her burden of showing prejudice.

### C. Vocational Expert

Plaintiff argues that by relying on erroneous vocational-expert testimony, the ALJ failed to meet his burden at step five of the sequential evaluation. (Doc. 18, p. 16). Plaintiff contends that the ALJ asked the vocational expert to consider an individual who required a sit/stand opinion with an alternating interval of 1 to 2 hours. (Doc. 18, p. 16). Plaintiff claims that limiting an individual to standing 1 to 2 hours before changing positions is vague. (Doc. 18, p. 17).

At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). To make this determination, an ALJ may obtain the testimony of a vocational expert. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ need not include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee*

*v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

In the hypothetical to the vocational expert, the ALJ included, among other limitations, a requirement for a sit/stand option "with an alternating interval of one to two hours." (Tr. 44). Plaintiff claims this requirement is vague. (Doc. 18, p. 17). The vocational expert testified that with this sit/stand option, an individual with this limitation could not perform Plaintiff's past relevant work, but could perform the jobs of marker, router, and photocopy machine operator. (Tr. 46). The vocational expert also testified that the DOT did not address the sit/stand option and the vocational expert based his opinion on his experience in job placement and job analysis. (Tr. 46-47). It is very clear from the hearing transcript that the vocational expert understood the ALJ's sit/stand option, did not ask any questions to clarify it, and found jobs in significant numbers in the national economy that an individual with Plaintiff's limitations could perform. Substantial evidence supports the ALJ relying on the vocational expert's testimony and the ALJ did not err in doing so.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The

Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on February 21, 2023.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties